## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY P. STEVENS, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 3:09cv00498 (WWE) |
| LANDMARK PARTNERS, INC., | : |
| Defendant. | : |

## <u>ORDER</u>

AND NOW, this ____ day of _____, 2013, upon consideration of the Motion in Limine of Defendant Landmark Partners, Inc. to Preclude the Proffered Testimony of G. William Kennedy, Plaintiff's Expert on Alleged Damages, and any response thereto, it is hereby ORDERED that the Motion is GRANTED and that the proffered testimony of G. William Kennedy, Plaintiff's expert on alleged damages, is PRECLUDED.

BY THE COURT:

_____
Warren W. Eginton, S.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

GARY P. STEVENS,                            :
                                            :
            Plaintiff,                       :
                                            :
      v.                                    :     CIVIL ACTION NO.  3:09cv00498 (WWE)
                                            :
LANDMARK PARTNERS, INC.,                    :
                                            :
            Defendant.                       :
                                            :

## DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE PROFFERED TESTIMONY OF G. WILLIAM KENNEDY, PLAINTIFF'S EXPERT <u>ON ALLEGED DAMAGES</u>

Defendant Landmark Partners, Inc., by and through undersigned counsel, moves to preclude the proffered testimony of G. William Kennedy, Plaintiff's expert on alleged damages.  In further support of this Motion, Landmark submits the attached Memorandum of Law.

WHEREFORE, Defendant requests that the Court grant this Motion and preclude the proffered testimony of G. William Kennedy, Plaintiff's expert on alleged damages.

Respectfully submitted,

Dated: December **27**, 2012          BY:   *Robert V. Dell'Osa*

H. Robert Fiebach
Robert V. Dell'Osa
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000
(215) 665-2013 (fax)

John F. Droney, Esq. (ct10906)
Jeffrey J. Mirman, Esq. (ct05433)
LEVY & DRONEY, P.C.
74 Batterson Park Road, P.O. Box 887
Farmington, CT 06034-0887
(860) 676-3000
(860) 676-3200 (fax)

Attorneys for Defendant
Landmark Partners, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY P. STEVENS, | : |
| | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO.  3:09cv00498 (WWE) |
| | : |
| LANDMARK PARTNERS, INC., | : |
| | : |
| Defendant. | : |
| | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION IN LIMINE TO PRECLUDE THE PROFFERED TESTIMONY OF
## G. WILLIAM KENNEDY, PLAINTIFF'S EXPERT ON ALLEGED DAMAGES

Plaintiff Gary P. Stevens began working for defendant Landmark Partners, Inc.

("Landmark") in June, 2004 pursuant to a written agreement that provided for his compensation

and benefits, but which left one provision to be addressed post-employment.  That provision,

titled "Participation in the Economics of Landmark Partners, Inc.," provided:

> We are in the process of examining various options for key principals to benefit
> from their contributions to the growth of the firm.  At this time, we have not
> determined what form that will take, i.e., ownership in the management company,
> options, profit sharing, or some combination thereof.  You will have a meaningful
> participation (initially, 10%) in the program, once it is finalized.

In his initial Complaint and subsequent Amended Complaint, Mr. Stevens asserted that this

paragraph of the agreement entitled him to an equity interest in Landmark and that Landmark

was liable for breach of contract and misrepresentation because, inter alia, it never gave him

equity ownership in Landmark.

After fact discovery was closed, Landmark moved for summary judgment.

Landmark argued, among other things, that all of Mr. Stevens' claims based on a failure to give

him equity had to be dismissed because the parties' written agreement clearly and plainly did not

promise Mr. Stevens an equity interest in Landmark.  The Court agreed with Landmark and held

as a matter of law that Mr. Stevens was <u>not</u> entitled to an equity interest in Landmark:

> Because the contract expressly included profit sharing as a possible form of
> economic participation, Landmark did not breach the Agreement by formulating a
> profit sharing program rather than an equity ownership program, and Steven's
> breach of contract claim fails as a matter of law to the extent that it is based on a
> failure to provide him with equity ownership in Landmark.

> \*          \*          \*          \*          \*

> Accordingly, Stevens cannot prove that he relied on any misrepresentations that
> once the economic participation program was implemented that it would be in the
> form of ownership because that position is contradicted by the clear and
> unambiguous language of the contract.

[Ruling on Motion for Summary Judgment and Partial Summary Judgment (Doc. No. 175), pp.

12, 18.]

Three months after the Court issued its Ruling, Mr. Stevens served the report of

his damages expert, G. William Kennedy, Ph.D.  Dr. Kennedy uses three different sets of

calculations to measure Mr. Stevens' alleged damages.  All three sets of calculations share one

element in common -- all are purported valuations of a 10% <u>equity interest</u> in Landmark.  In

other words, Dr. Kennedy has made computations, and plans to testify, in a manner that

disregards completely the Court's Ruling on Motion for Summary Judgment.  In addition, Dr.

Kennedy bases two of his computations on a December 2010 transaction that the Court

previously ruled was <u>irrelevant</u> to this action.  Because Dr. Kennedy's proffered expert testimony

is in direct contradiction to the Court's Rulings, that testimony should be precluded.

## STATEMENT OF FACTS[1]

A.    **The Letter Agreement Between Landmark And Mr. Stevens Governing
Mr. Stevens' Employment As Head Of Landmark's Real Estate Group**

In 2004, Landmark was looking to hire someone to serve as the head of its real

estate group.  Mr. Stevens was one of the candidates for the position.  Following a number of

meetings and other communications, Landmark decided to offer the position to Mr. Stevens, and

Mr. Stevens accepted Landmark's offer.

On May 20, 2004, Mr. Stevens received a formal offer letter from Frank Borges,

Landmark's Chairman.  [Exhibit D to Landmark's Motion for Summary Judgment (copy

attached hereto as Exhibit A).]  The formal offer letter specified the various aspects of

compensation offered to Mr. Stevens.  In addition, the formal offer letter contained a paragraph

titled "Participation in the Economics of Landmark Partners, Inc." [Id. at p. STE-000028.]  That

paragraph provided:

> We are in the process of examining various options for key principals to
> benefit from their contributions to the growth of the firm.  At this time, we
> have not determined what form that will take, i.e., ownership in the
> management company, options, profit sharing, or some combination
> thereof.  You will have a meaningful participation (initially, 10%) in the
> program, once it is finalized.

[Id.]

Mr. Borges concluded the formal offer letter by requesting that Mr. Stevens

"[p]lease acknowledge your acceptance of these terms by executing a copy of this letter and

returning it to me." [Id. at p. STE-000029.]  Mr. Stevens signed the offer letter and returned it to

Landmark.

---

[1] The facts set forth in Sections A, B, and C of this Statement of Facts are taken directly from Landmark's
Memorandum of Law in Support of Motion for Summary Judgment (filed under seal on March 9, 2011), and record
support for each fact appears in the exhibits to that Memorandum of Law.  For the Court's convenience, several of
the exhibits to Landmark's Motion for Summary Judgment are also attached to this Memorandum of Law.

**B.     The Economic Participation Program Formulated By Landmark**

   The "program" referenced in the economic participation paragraph of the parties'
letter agreement was <u>not</u> a program just for Mr. Stevens.  Rather, as was stated in the letter
agreement itself, the program was to be a program for all of Landmark's "key principals."
Between May 2004 and September 2008, Landmark made efforts to formulate an economic
participation program for its key principals.[2]

   On September 29, 2008 Tim Haviland, Landmark's President, gave to Mr.
Stevens an outline of the economic participation program that Landmark was planning to
implement.  [Exhibit J to Landmark's Motion for Summary Judgment (copy attached hereto as
Exhibit B).]  Although the program was to be for all Landmark principals, the program terms
were given only to Mr. Stevens at that time.

   The program to be implemented was a profit sharing program.  As stated in the
program description itself, the goal of the program was to:

    Provide senior management a definable participation in the current-year operating
    profits of their respective product lines.

[<u>Id</u>. at p. STE-000196.]  Because participants were to participate in new funds "in their
respective product lines," employees working only in Landmark's real estate division would
share in the profits of real estate funds, but not in the profits of private equity funds.  The
program was to take effect on January 1, 2009.  [<u>Id</u>. at p. STE-000197.]

---

[2] While Landmark was taking steps to formulate the economic participation program, it put in place an interim
program called the "Profit Participation Bonus" program.  Under that program, Mr. Stevens received profit
participation bonus payments of $150,000 per year for 2004, 2005, 2006, and 2007, <u>i.e.</u>, a total of $600,000.

**C.      After Mr. Stevens Complained Vociferously About The Economic Participation Program As Applied To Him, The Parties Reached An Agreement On Financial Terms, But Mr. Stevens Refused To Release Landmark**

Mr. Stevens objected strenuously to the draft outline of the economic participation program. Landmark and Mr. Stevens had extensive communications throughout October 2008 over the terms of the economic participation program as applied to Mr. Stevens and about his continued employment with Landmark. Eventually, the parties reached agreement on the financial terms of Mr. Stevens' continued employment with Landmark. At that point, Landmark had its counsel prepare a letter agreement that would govern Mr. Stevens' continued employment with Landmark.

Under Landmark's proposal, the compensation offered to Mr. Stevens included, but was not limited to, the following:

- base salary of $300,000 for 2009 (i.e., a $50,000 increase over 2008);

- guaranteed bonus of $450,000 for 2009 (i.e., a $100,000 increase over 2008);

- "special compensation" of $2,000,000, payable in three equal installments on December 31, 2009, 2010, and 2011;

- Sharing of revenues, with a choice to be made by Mr. Stevens of receiving either (i) 15% of the annual management fee revenue generated from real estate funds or (ii) 10% of the annual management fee revenue generated from real estate funds plus 3% participation in a profit sharing plan for the private equity funds.

[Exhibit M to Landmark's Motion for Summary Judgment (copy attached hereto as Exhibit C), pp. STE-000250 to 000252.][3]

Mr. Stevens rejected the new proposed letter agreement. He claims he did so because the new proposed letter agreement contained a release of claims and would have

---

[3] The $2 million in "special compensation" was viewed by Mr. Stevens as an attempt to resolve his claim of "retroactivity."

permitted Landmark "to terminate [him] for any reason or no reason before he would realize any of the benefits purportedly offered under the 2008 proposed Agreement." Landmark included a release in the new agreement because Mr. Stevens had repeatedly asserted throughout October 2008 that the economic participation program (even as modified for Mr. Stevens) failed to comply with the parties' May 2004 agreement. Landmark terminated Mr. Stevens' employment on November 6, 2008.

### D.  Mr. Stevens' Claims Prior To The Court's Summary Judgment Ruling

Mr. Stevens' Amended Complaint included counts for breach of contract and negligent misrepresentation. All claims were based, at least in part, on a purported failure by Landmark to provide Mr. Stevens with an <u>equity interest</u> in Landmark. For example, Mr. Stevens asserted that the economic participation program proposed for him in September and October 2008 constituted a breach of the parties' letter agreement because:

> (i) it fails to provide Stevens with an <u>equity interest</u> in the Firm as a whole; (ii) it fails to provide Stevens with an interest equal to 10% of the <u>equity</u> in the Firm; (iii) it fails to provide Stevens with an interest that recognizes the increase in value of the <u>equity</u> in the Firm between the date of his employment and the present; . . .

[Amended Complaint, ¶ 21 (emphasis added).] As damages, Mr. Stevens sought "the value of the increase in 10% of the <u>equity interest</u> in [Landmark] from May 20, 2004 to date." [Amended Complaint, ¶ 23 (emphasis added).]

Mr. Stevens' negligent misrepresentation claim likewise was premised on a purported promise of <u>equity</u> in Landmark:

> \*          \*          \*          \*          \*
>
> Defendant never conveyed to Stevens any doubt that whatever program it developed would provide Stevens with the promised 10% <u>equity interest</u> in the entire Firm valued as of the commencement of his employment in May 2004.
>
> \*          \*          \*          \*          \*

Defendant's statements to Plaintiff regarding his <u>equity participation</u> in the Firm were false. Defendant falsely and through misleading statements led Stevens to believe that it would provide him with a 10% <u>equity interest</u> in the entire Firm, which would be effective so as to begin to build value as of May 2004. Contrary to what it represented and led Stevens to believe, Defendant in fact contemplated that terms such as those contained in the proposal it made in or around September 2008 satisfied its commitment.

[Amended Complaint, ¶ ¶ 34, 35, 38 (emphasis added).]

### E. The Court Rules As A Matter Of Law That Mr. Stevens Was Not Entitled To An Equity Interest In Landmark

Following the close of fact discovery, the parties filed cross-motions for summary judgment. The Court issued its Ruling on July 27, 2012. The Court found that Mr. Stevens' claims failed as a matter of law insofar as they were based on a failure to provide him with equity ownership in Landmark:

Because the contract expressly included profit sharing as a possible form of economic participation, Landmark did not breach the Agreement by formulating a profit sharing program rather than an equity ownership program, and <u>Steven's breach of contract claim fails as a matter of law to the extent that it is based on a failure to provide him with equity ownership in Landmark</u>.

\*          \*          \*          \*          \*

Accordingly, <u>Stevens cannot prove that he relied on any misrepresentations that once the economic participation program was implemented that it would be in the form of ownership</u> because that position is contradicted by the clear and unambiguous language of the contract.

[Ruling on Motion for Summary Judgment and Partial Summary Judgment (Docket No. 175) at pp. 12, 18 (emphasis added).] Thus, the Court determined that Mr. Stevens had no claim to an equity interest in Landmark.

7

**F.**     **The Report Of Mr. Stevens' Damages Expert**

Mr. Stevens retained G. William Kennedy, Ph.D. of FTI Consulting as an expert witness on alleged damages, and Dr. Kennedy issued his report on September 24, 2012.  [A true and correct copy of the Kennedy Report is attached hereto as Exhibit D.]

Dr. Kennedy submits three calculations of Mr. Stevens' alleged damages.  Dr. Kennedy succinctly summarizes the methodologies and their results on page 2 of his Report:

> 1)     $30,180,000:  An amount equivalent to a 10% economic interest in Landmark's value, established by arms-length price paid in the Religare acquisition of 55% of the Company in 2010, in excess of the 2004 value of a 10% interest established by the value at which Landmark repurchased Stan Alfeld's shares, adjusted for the cash paid and the debt incurred by the Company to Alfeld in connection with the repurchase of his shares, and for an additional transaction in Company stock that occurred later in 2004.
>
> 2)     $16,288,676:  An amount equivalent to a 10% share in the increase in value of Landmark Partners, Inc. based on an independent valuation of Landmark at 2008 and the 2004 value of the Company established by the value at which Landmark repurchased Stan Alfeld's shares, adjusted for the cash paid and the debt incurred by the Company to Alfeld in connection with the repurchase of his shares, and for an additional transaction in Company stock that occurred later in 2004, and
>
> 3)     $3,963,570:   An amount equivalent to 10% of the distributions paid to the shareholders of Landmark over the periods 2004 to 2008.

[Kennedy Report, p. 2 (footnote omitted).]  Methodologies 1 and 2 are described as alternatives (id. at p.8), so that Dr. Kennedy views Mr. Stevens' alleged damages as the sum of methodologies 1 and 3 or, in the alternative, the sum of methodologies 2 and 3.

Dr. Kennedy's first and second methodologies are based expressly on transactions in Landmark stock and purport to calculate the increase in "fair value," from 2004 to 2008, of a 10% interest in Landmark.  Dr. Kennedy describes "fair value" as "the <u>value of the corporation's shares</u> determined 'using customary and current valuation concepts and techniques…without discounting for lack of marketability or minority status.'"  [Id. at p.2 (emphasis added).]  Thus, it

8

is apparent on the faces of methodologies 1 and 2 that Dr. Kennedy is treating Mr. Stevens as if he acquired a 10% equity interest in Landmark in 2004 and sold that equity interest in 2008.

Dr. Kennedy's third methodology is based on the distributions paid to Landmark's shareholders from 2004 to 2008 and calculates the value of 10% of those distributions. Since shareholder distributions are paid only to corporation shareholders, that third methodology likewise treats Mr. Stevens as if he were the owner of a 10% equity interest in Landmark. This is confirmed by Dr. Kennedy's decision to add 10% of shareholder distributions (calculation 3) to his calculation of the increase in value of a 10% equity interest in Landmark (calculations 1 and 2). Only shareholders receive the benefit of both the increase in a corporation's value and the shareholder distributions paid by the corporation.

## ARGUMENT

All evidence, to be admissible, must be relevant. Fed.R.Evid. 402. Evidence is relevant if it makes more or less probable a fact that is "of consequence in determining the action." Fed.R.Evid. 401. These rules apply to expert testimony as well as fact evidence. Thus, expert testimony must help the fact-finder "determine a fact in issue" in order to be admissible. Fed.R.Evid. 702(a). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993).

**A.    Dr. Kennedy's Testimony Does Not Relate To Any Fact In Issue Because The Court Has Already Ruled That Mr. Stevens Was Not Entitled To An Equity Interest In Landmark**

The Court has ruled that Mr. Stevens as a matter of law has no claim to an equity interest in Landmark. The Court's Ruling is the law of the case, and Mr. Stevens may not

circumvent the clear and unequivocal pronouncements of this Court through the proposed testimony of his expert.

"The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." De Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotations omitted). This doctrine applies to district court decisions made during the course of litigation, such as when an issue is adjudicated at the summary judgment state. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Therefore, a Court should not depart from the rulings of law it made in previous stages of a case absent compelling reasons for doing so. See United States v. Cirami, 563 F.2d 26, 33 n.6 (2d Cir. 1977) ("Once a rule of law has been established for a case we will not depart therefrom . . . unless special circumstances of the case warrant a reopening of issues previously decided.")

Dr. Kennedy's three measures of damages all are based on the premise that Mr. Stevens was entitled to a 10% equity share in Landmark. However, the Court has already determined that Mr. Stevens was not entitled to equity in Landmark, and that determination is now the law of this case. Thus, Dr. Kennedy's proposed testimony would be contrary to the law of the case.[4]

As a result of the Court's Ruling, the value of a 10% equity interest in Landmark is not a fact in issue in this case, and the jury will not have to make a determination of equity

---

[4] Dr. Kennedy apparently did not consider the Court's Ruling on Summary Judgment when formulating his opinions, as the Ruling is not included on the "list of documents considered" that is part of Dr. Kennedy's expert report. [See Kennedy Report (Exhibit D), pp. 34-36.] The fact that Dr. Kennedy did not consider the Ruling presumably explains why he ignored the Ruling in performing his computations.

value.  Consequently, Dr. Kennedy's proposed testimony "is not relevant and, ergo, non-helpful."  <u>Daubert</u>, 509 U.S. at 591.  That testimony should therefore be precluded in its entirety.

**B.    Dr. Kennedy's Testimony Also Should Be Precluded Because It Ignores The Court's Prior Discovery Rulings**

Given the Court's Ruling on Landmark's Motion for Summary Judgment, any and all expert testimony about the value of an equity interest in Landmark is improper.  However, two of Dr. Kennedy's computations would be improper even if the Court had not ruled that Mr. Stevens has no claim for an equity interest in Landmark.  That is so because Dr. Kennedy's first and second computations ignore one of the Court's explicit discovery rulings.

Dr. Kennedy's first damages calculation makes express use of, and is based directly on, public reports about a December 2010 transaction in which a 55% interest in Landmark was sold to Religare Enterprises.  [<u>See</u> Kennedy Report (Exhibit D) at pp. 6-7.]  As Dr. Kennedy states:

> It was reported in the financial press that in December 2010, Religare Enterprises, a New Delhi based financial services group, acquired a 55% Ownership interest in Landmark for approximately $171.5 million.  This transaction in Landmark results in an implied aggregate equity value of approximately $311.8 million at an estimated price-to-EBITDA multiple of 7.6 and price-to-AUM of 3.6%.

[<u>Id</u>. at p. 6 (footnote omitted).]  Dr. Kennedy's second damages calculation does likewise:

> The third transaction in Landmark's stock occurred in 2010 when Religare acquired a 55% interest in Landmark for $171.5 million.  It's reasonable to assume that Religare is a sophisticated investor and the transaction price paid to acquire a 55% interest in Landmark would represent an arms-length transaction that provides a relevant indication of the value and pricing of Landmark.

[<u>Id</u>. at p. 12 (footnote omitted).]  Dr. Kennedy's reliance on the Religare transaction is directly contrary to the Court's express ruling about the relevancy of that transaction.

Prior to its summary judgment decision, the Court had permitted Mr. Stevens to conduct discovery about Landmark's finances, but had strictly limited the discovery to the 2004

to 2008 time period during which Mr. Stevens was employed by Landmark. After becoming

aware of the Religare transaction, Mr. Stevens specifically requested documents concerning that

transaction. Because the transaction had occurred more than two years after the termination of

Mr. Stevens' employment, Landmark objected to those document requests. Mr. Stevens

ultimately filed a Motion to Compel production of the Religare transaction documents. [See

Doc. No. 116.] The Court denied Mr. Stevens' Motion to Compel. In support of its decision, the

Court stated:

> Plaintiff argues that although the Religare sale occurred sometime
> later, it is probative of the value of Landmark's equity as of his
> termination date. . . . The Religare sale, however, occurred more
> than two years after Plaintiff's termination, not weeks or months,
> and Landmark correctly contends that the Religare sale is not a
> "recent sale price" which could be used as the "best evidence of
> market value" of its equity during the time of Plaintiff's
> employment. Because the date of the Religare sale was so far
> removed from the time period relevant to this action, Plaintiff's
> motion to compel the production of documents related to the
> December 2010 Religare sale . . . is **denied**.

[Ruling on Plaintiff's Motion to Compel (Doc. No. 142), pp. 2-3 (emphasis in original).] Thus,

the Court has already ruled that the Religare transaction is irrelevant for purposes of this

litigation.

Because Dr. Kennedy bases his first and second computations on the Religare

transaction, those computations are contrary to the law of the case. As a result, expert testimony

about Dr. Kennedy's first and second computations would have to be precluded even if the value

of an equity interest in Landmark were a legitimate issue in this action.

## CONCLUSION

The Court has ruled that Mr. Stevens has no claim to equity ownership of Landmark. Mr. Stevens may not circumvent the Court's Ruling through expert testimony premised entirely on the assumption that Mr. Stevens had a 10% equity interest in Landmark. Accordingly, the testimony of his expert, G. William Kennedy, Ph.D., should be precluded in its entirety.

Respectfully submitted,

Dated: December **27**, 2012          BY:   *Robert V. Dell'Osa*

H. Robert Fiebach
Robert V. Dell'Osa
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000
(215) 665-2013 (fax)

John F. Droney, Esq. (ct10906)
Jeffrey J. Mirman, Esq. (ct05433)
LEVY & DRONEY, P.C.
74 Batterson Park Road, P.O. Box 887
Farmington, CT 06034-0887
(860) 676-3000
(860) 676-3200 (fax)

Attorneys for Defendant
Landmark Partners, Inc.

## CERTIFICATION OF SERVICE

I hereby certify that on December **27** , 2012, a copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Preclude the Proffered Testimony of G. William Kennedy, Plaintiff's Expert on Alleged Damages was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

By:  Robert V. Dell'Osa

Robert V. Dell'Osa
COZEN O'CONNOR
1900 Market Street
Philadelphia, Pennsylvania 19103
(215) 665-2000
(215) 665-2013 (fax)

*Counsel for Landmark Partners, Inc.*